OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



July 10, 2000

The Honorable Patricia Gray
Chair, Committee on Public Health
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0252

Re:  Whether a municipal park board may authorize a hotel under its management and control pursuant to section 306.032 of the Local Government Code to offer memberships in the hotel's health and fitness center to non-hotel guests, including local residents  (RQ-0194-JC)

Dear Representative Gray:

You ask whether a municipal park board may authorize a hotel under its management and control pursuant to section 306.032 of the Local Government Code to offer memberships in the hotel's health and fitness center to non-hotel guests, including local residents. While section 306.032 authorizes a municipal park board to manage and control only hotels that serve the purpose of attracting visitors and tourists to the municipality, its does not expressly require a municipal park board to deny local residents the use of such a hotel's facilities. Moreover, chapter 306 of the Local Government Code generally contemplates that facilities under the management and control of a municipal park board will be open to the general public, without regard to residency, and gives municipal park boards broad rulemaking authority to regulate use of facilities under their control. Accordingly, we conclude that a municipal park board may adopt rules authorizing a hotel under its management and control to offer memberships in the hotel's health and fitness center to non-hotel guests, provided that this use of the hotel's facilities does not interfere with the hotel or fitness center's statutorily mandated purpose.

You provide the following background information: In 1983, the City of Galveston (the "City") leased property to the Moody Foundation, which developed the Moody Gardens Complex, including an aquarium, tropical biome, and convention center. See Letter from Honorable Patricia Gray, Texas State Representative, to Honorable John Cornyn, Attorney General of Texas, at 1 (Feb. 17, 2000) (on file with Opinion Committee). Later, the lease was assigned from the City to the Park Board of Trustees of the City of Galveston (the "Park Board"), see id., as is authorized by section 306.032 of the Local Government Code. At the same time, Moody Gardens, Inc. ("Moody Gardens") entered into an agreement with the Park Board to operate and manage the Moody Gardens Complex. See id. Thereafter, the Moody Gardens Hotel (the "Hotel") was constructed at the Moody Gardens Complex. See id.

In October 1998, the Park Board adopted rules governing the operation of the Moody Gardens Complex, including the Hotel. *See id.* Those rules provide that Moody Gardens may not offer or sell health club memberships to non-hotel guests. *See id.* at 2. The Park Board and the City would like to know if the Park Board may now amend those rules to authorize Moody Gardens to sell memberships in the Hotel's health and fitness center to non-hotel guests, including residents of Galveston. *See id.*

In addition, we note that you inform us that the City entered into a lease agreement with the Galveston Health and Racquet Club (the "Club") whereby the City agreed to exert its best efforts to avoid leasing to or operating any business competing with the Club. *See id.* at 1. Although it appears that your inquiry stems in part from the Club's opposition to the Hotel offering health and fitness center memberships to non-hotel guests, we have been asked only about the Park Board's statutory authority under chapter 306 of the Local Government Code. We have not been asked about the legal effect of the agreement, if any, and we do not address it.

Chapter 306 of the Local Government Code authorizes a home-rule municipality with a population of more than 40,000 to create a park board of trustees for the purpose of acquiring, improving, equipping, maintaining, financing, or operating parks. *See* TEX. LOC. GOV'T CODE ANN. §§ 306.001, .011 (Vernon 1999). Municipal park boards are authorized to purchase and improve parks and related facilities, *see id.* § 306.031, to advertise the municipality's "recreational advantages" to attract "visitors, tourists, residents, and other users," *id.* § 306.037, and to enter into contracts, leases and other agreements, *see id.* § 306.038. Furthermore, municipal park boards have authority to adopt rules relating to the use of parks and facilities under their management and control:

> The board may adopt and enforce reasonable rules, including rules establishing a means of enforcing other rules, relating to the use of parks and facilities under the management and control of the board, including use by the public or by lessees, concessionaires, or other persons carrying on a business activity within the area of the parks and facilities.

*Id.* § 306.039.

We understand that the Park Board derives its authority to manage and control the Hotel from section 306.032 of the Local Government Code, a provision of chapter 306 that applies only to a home-rule municipality that has a population of less than 80,000 and borders on the Gulf of Mexico. *See id.* § 306.032(a). It provides in pertinent part as follows:

> (b) In addition to other powers under this chapter, the municipality or the board of the municipality may acquire by any method, including by gift, devise, lease, or purchase or may improve land or buildings, or may construct or enlarge buildings, to be used

for public parks, playgrounds, *or other facilities that serve the purpose of attracting visitors and tourists to the municipality*. The municipality or board may lease the facilities, as lessor or lessee, on terms the municipality or board considers appropriate. The land may be located inside or outside the boundaries of the municipality, but must be located inside the limits of the county in which the municipality is located.

(c) In a municipality subject to this section, the facilities placed under the management and control of the board may include:

(1) parks;

(2) civic centers, civic center buildings, auditoriums, exhibition halls, or coliseums;

(3) marinas or cruise ship terminal facilities;

(4) hotels or motels;

(5) parking or storage facilities for motor vehicles or other conveyances;

(6) golf courses;

(7) trolley or trolley transportation systems; and

(8) *other facilities considered advisable in connection with the preceding facilities that serve the purpose of attracting visitors and tourists to the municipality*.

*Id.* § 306.032(b), (c) (emphasis added).

You ask, in essence, whether a municipal park board may authorize a hotel under its management and control pursuant to this statute to sell memberships in the hotel's health and fitness center to non-hotel guests, including local residents. We conclude that a municipal park board may do so, for the following reasons.

As a threshold matter, we note that section 306.032 clearly authorizes a municipal park board to manage and control a hotel that includes a health and fitness center. On its face, the statute authorizes a municipal park board to manage and control various types of facilities "that serve the purpose of attracting visitors and tourists to the municipality." *Id.* § 306.032(b). Subsection (c), in subparts (1) through (7), provides specific examples of the types of facilities that may be placed

under the management and control of the municipal park board, such as parks and civic centers, and it expressly includes hotels in subsection (c)(4). *See id.* § 306.032(c)(4). Thus, section 306.032 expressly authorizes a municipal park board to manage and control a hotel that serves the purpose of attracting visitors and tourists to the municipality. Section 306.032 does not expressly provide that such a hotel may include facilities normally associated with resort hotels, such as swimming pools or a health and fitness center, but we believe that the authority to offer these kinds of services and amenities is implicit in the authority to manage and control a hotel that serves the purpose of attracting visitors and tourists to the municipality. Moreover, in addition to listing specific examples of permissible facilities, subsection (c), subpart (8) generally authorizes the management and control by a municipal park board of "other facilities considered advisable in connection with the preceding facilities that serve the purpose of attracting visitors and tourists to the municipality." *Id.* § 306.032(c)(8).

Section 306.032 does not address whether the general public, including local residents, may use facilities and "connected facilities" or whether such use must be limited to visitors and tourists, but based on our review of chapter 306 as a whole we conclude that section 306.032 may not be construed to require this limitation. First, the general mission of municipal park boards under chapter 306 is to provide parks to the general public, without regard to residency. *See, e.g., id.* §§ 306.011 (authorizing creation of board "for purpose of acquiring, improving, . . . or operating parks"), .031 (authority to manage parks, including historical sites of "statewide historical significance"). Indeed, as we have noted, section 306.037 authorizes a park board to advertise the municipality's recreational advantages "for the purpose of attracting visitors, tourists, *residents, and other users* of the public facilities operated by the board." *Id.* § 306.037 (emphasis added). Second, section 306.039 gives a municipal park board broad rulemaking authority to adopt rules relating to use of parks and facilities under its management and control "including use by the public or by lessees, concessionaires, or other persons carrying on a business activity within the area of the parks and facilities." *Id.* § 306.039. We believe that this broad rulemaking authority grants a municipal park board the discretion to authorize a section 306.032 facility to engage in activities that are not inconsistent with the purpose of attracting visitors and tourists to the municipality and that are not specifically prohibited by chapter 306 or other law.

It has been suggested that subsection (c)(8) of section 306.032 expressly precludes a municipal park board from managing and controlling a facility connected with a hotel that offers memberships to non-hotel guests, including local residents. Again, subsection (c) contains a list of specific facilities that may be placed under the management and control of a municipal park board. That list ends with subsection (c)(8), which generally provides for "other facilities considered advisable in connection with the preceding facilities that serve the purpose of attracting visitors and tourists to the municipality." *Id.* § 306.032(c)(8). Briefs submitted on behalf of the Galveston Health and Racquet Club suggest that a connected facility authorized by subsection (c)(8) is limited to serving tourists and visitors. For example, one brief states that in order for a facility to be authorized by subsection (c)(8) "it must relate to the operation of an enumerated facility [*i.e.*, a facility listed in subparts (1) through (7)] and have as its purpose the attraction of visitors and tourists *to the City*. A health club facility selling memberships for its use to local residents of the

City cannot in any way be deemed to have the purpose of attracting visitors and tourists to the City." Letter from J. Michael Fieglein, Attorney at Law, to Honorable John Cornyn, Attorney General of Texas, at 4 (Mar. 29, 2000) (on file with Opinion Committee) [hereinafter "Fieglein Brief"] (emphasis in the original). That brief concludes that "since the sale of memberships to non-Hotel guests at the Hotel fitness center does not serve the purpose prescribed by the enabling legislation, it is not an authorized facility and it is outside the scope of authority granted by the statute." *Id.* at 6.

As noted above, we agree that section 306.032(c)(8) limits a municipal park board to managing and controlling connected facilities that serve the purpose of attracting visitors and tourists to the municipality. Indeed, we believe it is clear from subsection (b) of section 306.032 that this limitation applies not only to connected facilities but also to *all* the facilities specifically listed in subsections (c)(1) through (7). *See* TEX. LOC. GOV'T CODE ANN. § 306.032(b) (Vernon 1999) (authorizing municipal park board to acquire, construct, or enlarge park and playground buildings "or other facilities that serve the purpose of attracting visitors and tourists to the municipality"), (c)(1)-(7) (listing permissible facilities). Clearly, a municipal park board is not authorized to manage and control a facility or a connected facility under section 306.032 that does not serve the purpose of attracting visitors and tourists.

We do not agree, however, that the language limiting the purpose of section 306.032 facilities is intended to prohibit the use of these facilities by local residents. First, as we have noted, the legislature vested the authority to manage and control section 306.032 facilities in a municipal park board, an entity that is not limited to providing facilities to any particular segment of the public. *See, e.g., id.* § 306.037 (authorizing municipal park board to advertise the municipality's "recreational advantages" to attract "visitors, tourists, residents, and other users"). Had the legislature intended use of section 306.032 facilities to be wholly limited to visitors and tourists, we believe that the legislature would have either made this limitation express or vested the authority to control and manage these facilities in an entity other than a municipal park board.

Furthermore, the Club's construction of section 306.032 would mandate the exclusion of local residents from other section 306.032 facilities. There is no legal distinction between allowing city residents to use facilities on a one-time basis, such as admission to a park for a day, and offering local residents memberships in facilities. If we were to interpret section 306.032 to prohibit a municipal park board from permitting a hotel to offer memberships in its connected facilities to anyone but visitors and tourists, it would also mean that a municipal park board could not authorize other section 306.032 facilities to serve city residents. We doubt that the legislature intended to deny city residents use of section 306.032 facilities like parks, exhibition halls, hotel restaurants, parking facilities, golf courses, and trolley transportation systems. *See* TEX. GOV'T CODE ANN. § 311.023(5) (Vernon 1998) (in construing statute, court may consider consequences of a particular construction). Moreover, we must avoid a construction of the statute that would lead to this absurd result. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996) ("Courts should not read a statute to create . . . an absurd result.") (citation omitted); TEX.

GOV'T CODE ANN. § 311.021 (Vernon 1998) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended.").

Comparisons have been made between section 306.032 and chapters 351 and 352 of the Tax Code, which authorize the levy of a municipal and county hotel occupancy tax that "may be used only to promote tourism and the convention and hotel industry," TEX. TAX CODE ANN. § 351.101(a) (Vernon Supp. 2000) (municipal tax), or for the purpose of attracting visitors and tourists to the county, *see id.* §§ 352.101-.108 (county tax). Opinions of this office concluded that these taxes could not be used to support basic governmental infrastructure, such as city recreational facilities or a county golf course, as these kinds of improvements would not serve the purpose of attracting visitors and tourists. *See* Tex. Att'y Gen. Op. Nos. JM-965 (1988), JM-184 (1984). These opinions addressed the proper use of statutorily dedicated funds. These opinions did not address the proper use of facilities financed with these funds, and they do not suggest that a city or county may not allow a tourist facility financed with hotel occupancy taxes to do business with local residents as well as visitors and tourists.

In sum, section 306.032 authorizes a municipal park board to manage and control various types of facilities "that serve the purpose of attracting visitors and tourists to the municipality," TEX. LOC. GOV'T CODE ANN. § 306.032(b), (c)(8) (Vernon 1999), including hotels and connected facilities, *see id.* § 306.032(c)(4), (8). While section 306.032 authorizes a municipal park board to manage and control only hotels and connected facilities that serve the purpose of attracting visitors and tourists to the municipality, the statute does not limit use of these facilities to visitors and tourists. Furthermore, chapter 306 of the Local Government Code generally contemplates that facilities under the management and control of a municipal park board will be open to the general public, without regard to residency, and gives municipal park boards broad rulemaking authority to regulate use of facilities under their control. For these reasons, we conclude that a municipal park board may adopt rules authorizing a hotel under its management and control to offer memberships in the hotel's health and fitness center to non-hotel guests, including local residents. With regard to the situation giving rise to your inquiry, we do not address whether such rules would conflict with the City's lease agreement with the Galveston Health and Racquet Club. *See supra* page 2.

We caution that a municipal park board may not authorize a section 306.032 hotel to offer memberships in its health and fitness center to non-hotel guests if this use of the facilities interferes with the hotel or fitness center's statutorily mandated purpose of attracting visitors and tourists to the municipality. Section 306.032 does not authorize a municipal park board to manage and control a hotel that does not serve the purpose of attracting visitors and tourists. This limitation applies with equal force to the facilities connected with the hotel.

Finally, it has been suggested that section 306.032 facilities should not be permitted to compete with local businesses for the patronage of local residents. *See, e.g.,* Fieglein Brief, *supra,* at 2 (noting that business operations of Moody Gardens "compete tax free against local business taxpayers"). It is for the legislature to determine whether the statute should be amended to limit the permissible uses of section 306.032 facilities to address any hardship caused to local businesses.

Furthermore, although we cannot conclude that a municipal park is precluded by law from authorizing use of a hotel fitness center by local residents on a membership basis, a municipal park board has broad discretion with respect to the use of facilities under its management and control and is certainly not affirmatively required to permit such use.

## S U M M A R Y

A municipal park board may adopt rules authorizing a hotel under its management and control pursuant to section 306.032 of the Local Government Code to offer memberships in the hotel's health and fitness center to non-hotel guests, including local residents, provided that this use of the hotel's facilities does not interfere with the hotel or fitness center's statutorily mandated purpose of attracting visitors and tourists to the municipality. We do not address whether such rules would conflict with any preexisting lease agreement.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee